|  |  |
|---|---|
| SAMMY DAVIS MORGAN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, et al.,<br><br>　　　　　Defendants. | No. 2:19-CV-1179-KJM-DMC-P<br><br><br>FINDINGS AND RECOMMENDATIONS |

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court are Defendants' motion to dismiss, ECF No. 133, Plaintiff's opposition, ECF No. 137, and Defendants' reply, ECF No. 139.

**I. PLAINTIFF'S ALLEGATIONS**

Plaintiff names the following as defendants: (1) Sacramento County Sheriff's Department; (2) Morgan, deputy/sheriff officer at Sacramento County main jail; and (3) Croteau, sergeant/sheriff officer at Sacramento County main jail. ECF No. 127, pg. 2. Plaintiff makes six claims against the above Defendants, namely (1) cruel and unusual confinement claim against the Sacramento County Sheriff's Department; (2) cruel and unusual punishment claim against Defendant Morgan; (3) a due process violation against Defendant Croteau; (4) a violation of the

1  American's with Disabilities Act by Sacramento County Sheriff's Department; (5) a violation of
2  section 504 of the Rehabilitation Act, 29 U.S.C. 794 by Sacramento County Sheriff's
3  Department; and (6) a violation of California Government Code 11135 by Sacramento County
4  Sheriff's Department.  Plaintiff's claims are based on the following allegations.

### A. Sleeping Conditions

Plaintiff alleges that due to Sacramento County Sheriff's Department, Plaintiff was forced "to sleep and or lay in unaccommodating Americans with Disabilities Act [ADA] institutional cells" from December 20, 2018, to January 17, 2019, and on February 13, 2019.  See id. at 3.  "On numerous occasions human bodily waste spilled on my upper and lower body region due to being made . . . to sleep and or lay on ground area inches away from cell urinal."  Id.  Plaintiff alleges that inmates with disabilities are required "to go into an unaccommodating ADA cell[,] take the mattress from the top bunk area[,] place it on the ground area[,] and live in those inhumane conditions until accommodations comes available."  Id.  Plaintiff alleges that he "possessed while at Defendant(s) [sic] jail an indefenant [sic] chrono for lower tier lower bunk accommodations due to his immobile disabilities and chronic issues placing him under the Americans with Disabilities Act."  Id.

### B. Defendant Morgan

Plaintiff states that on February 13, 2019, he expressed to Defendant Morgan that he requires "a lower tier lower bunk area of the jail due to [his] disabilities."  Id. at 4.  Defendant Morgan allegedly replied that Plaintiff is to get his mattress from the top bunk area and sleep on the ground.  See id.  When Plaintiff tried to show Defendant Morgan the chrono, Defendant "Morgan grabbed [Plaintiff] while [he] was facing away from him . . . and forcefully slammed [him] on the ground."  Id.

### C. Defendant Croteau

Plaintiff states that as a result of the above events, Plaintiff was found guilty of insubordination and failure to comply.  See id. at 5.  Defendant Croteau "manipulated my disciplinary hearing statement by changing my words completely to fit the reason's why he found me guilty."  Id.

## II. STANDARD OF REVIEW

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The Court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

///

///

1            In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials
2    outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998);
3    Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The Court may, however, consider: (1)
4    documents whose contents are alleged in or attached to the complaint and whose authenticity no
5    party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question,
6    and upon which the complaint necessarily relies, but which are not attached to the complaint, see
7    Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials
8    of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir.
9    1994).
10           "The Supreme Court has instructed the federal courts to liberally construe the
11   inartful pleading of pro se litigants.  It is settled that the allegations of [a pro se litigant's
12   complaint] however inartfully pleaded are held to less stringent standards than formal pleadings
13   drafted by lawyers."  See Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987) (citation and
14   internal quotation marks omitted; brackets in original).  The rule, however, "applies only to a
15   plaintiff's factual allegations."  See Neitzke v.Williams, 490 U.S. 319, 330 n.9 (1989). "'[A]
16   liberal interpretation of a civil rights complaint may not supply essential elements of the claim
17   that were not initially pled.'"  See Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th
18   Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).
19           Further, leave to amend must be granted "[u]nless it is absolutely clear that no
20   amendment can cure the defects."  Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per
21   curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).
22   / / /
23   / / /
24   / / /
25   / / /
26   / / /
27   / / /
28   / / /

4

**III. DISCUSSION**

Defendants move to dismiss Plaintiff's fourth amended complaint for failing to exhaust administrative remedies and for failing to state a claim for relief.

A. Exhaustion

Prisoners seeking relief under § 1983 must exhaust all available administrative remedies prior to bringing suit. See 42 U.S.C. § 1997e(a). This requirement is mandatory regardless of the relief sought. See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)). Because exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies while the lawsuit is pending. See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). The Supreme Court addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199 (2007), and held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint because lack of exhaustion is an affirmative defense which must be pleaded and proved by the defendants; (2) an individual named as a defendant does not necessarily need to be named in the grievance process for exhaustion to be considered adequate because the applicable procedural rules that a prisoner must follow are defined by the particular grievance process, not by the PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not all, claims are unexhausted. The defendant bears the burden of showing non-exhaustion in the first instance. See Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014). If met, the plaintiff bears the burden of showing that the grievance process was not available, for example because it was thwarted, prolonged, or inadequate. See id.

Defendants argue that Plaintiff admits that he failed to exhaust administrative remedies for all six of his claims. See ECF No. 133-1, pg. 4. However, for Plaintiff's first three claims, Plaintiff marks the "Yes" box beside the question "Did you appeal your request for relief on Claim [X] to the highest level?". See ECF No. 127, pgs. 3-5. For the rest of Plaintiff's claims, Plaintiff explicitly states, "I did request for relief on Claim [X] on appeal form to the highest level made available to me." See id. at 7-11.

///

5

1          However, for the first three claims Plaintiff also provides information following
2  the prompt, "If you did not submit or appeal a request for administrative relief at any level, briefly
3  explain why you did not." See id. at 3-5. Plaintiff answers the prompt stating, "Institutional
4  regular grievance procedures are poorly tracked and it was no form to report misconduct as an
5  Americans with Disabilities Act recipient." Id. As to each of the remainder of Plaintiff's claims,
6  Plaintiff states the same unprompted. See id. at 7-11.
7          Plaintiff's "check-the-box form" gives rise to an inconsistency concerning
8  exhaustion. Either Plaintiff did appeal to the highest level or he did not. He states that he did,
9  while at the same time responding to a prompt of which any response suggests Plaintiff did not in
10 fact appeal a request for relief.
11         As mentioned above, it is Defendants' burden to prove non-exhaustion. However,
12 Defendants merely highlight one of the two possible explanations of Plaintiff's complaint.
13 Defendants ignore the fact that Plaintiff alleges that he did in fact appeal his claims to the highest
14 level. Defendants do not provide any evidence concerning the administrative proceedings that
15 may or may not have occurred. Defendants have not carried their burden as to exhaustion.
16 Therefore, the Undersigned recommends denying Defendants' motion as to non-exhaustion.
17         B. Conditions of Pretrial Detention
18         "Under the Due Process Clause, detainees have a right against jail conditions or
19 restrictions that 'amount to punishment.'" Pierce v. Cty. of Orange, 526 F.3d 1190, 1205 (9th
20 Cir. 2008) (citing Bell v. Wolfish, 441 U.S. 520, 535-37 (1979)). "This standard differs
21 significantly from the standard relevant to convicted prisoners, who may be subject to punishment
22 so long as it does not violate the Eighth Amendment's bar against cruel and unusual punishment."
23 Pierce, 526 F.3d at 1205 (citing Bell, 441 U.S. at 535 n. 16).
24         Requiring a pretrial detainee to sleep on the floor on a mattress near a toilet for
25 several weeks may be a violation of the Constitution. See Owens v. Scott County Jail, 328 F.3d
26 1026, 1026-27 (8th Cir. 2003). In Owens, a district court had ruled on summary judgment that
27 requiring a pretrial detainee to sleep on a mattress on the floor near a toilet for five weeks was not
28 a violation of the Constitution. See id. at 1027. However, the Eighth Circuit reversed the district

1   court's ruling, demonstrating that requiring a pretrial detainee to sleep on a mattress on the floor
2   near a toilet for several weeks may be a violation of the Constitution.  See id.
3           Owens is factually similar to the case before the Court.  Plaintiff alleges that he
4   was required to sleep on the floor on a mattress near a toilet, resulting in "human bodily waste"
5   on Plaintiff's "upper and lower body regions."  See ECF No. 127, pg. 3.
6           Defendants cite cases discussing sleeping on the floor on a mattress.  See ECF No.
7   133-1, pgs. 5-6.  However, Defendants fail to address the issue of sleeping near a toilet.
8   Therefore, the Undersigned recommends denying Defendants' motion as to Plaintiff's Fourteenth
9   Amendment pretrial detention conditions claim.
10          C. Excessive Force
11          "Inmates who sue prison officials for injuries suffered while in custody may do so
12  under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted,
13  under the Fourteenth Amendment's Due Process Clause."  Castro v. Cty. of Los Angeles, 833
14  F.3d 1060, 1067-68 (9th Cir. 2016).  "[T]he Due Process Clause protects a pretrial detainee from
15  the use of excessive force that amounts to punishment."  Kingsley v. Hendrickson, 576 U.S. 389,
16  397 (2015) (citing Graham v. Connor, 490 U.S. 386, 395 n. 10 (1989)).  "[A] pretrial detainee can
17  [] prevail by showing that the actions are not 'rationally related to a legitimate nonpunitive
18  governmental purpose' or that the actions 'appear excessive in relation to that purpose.'
19  Kingsley, 576 U.S. at 397 (citing Bell v. Wolfish, 441 U.S. 520, 561 (1979)).  In an Eighth
20  Amendment excessive force claim a Plaintiff must plead that the prison official subjectively acted
21  unnecessarily and wantonly as well as objectively.  See Farmer v. Brennan, 511 U.S. 825, 832
22  (1994).  However, in a Fourteenth Amendment excessive force claim "a pretrial detainee must
23  show only that the force purposely or knowingly used against him was objectively unreasonable."
24  Kingsley, 576 U.S. at 496-97.
25          Here, Defendants argue that this claim should be dismissed because Plaintiff
26  mischaracterized his claim as an Eighth Amendment claim instead of a Fourteenth Amendment
27  claim.  This argument is unavailing as Plaintiff is a pro se inmate who is provided greater
28  leniency than a plaintiff represented by counsel.

1	Plaintiff states that on February 13, 2019, he expressed to Defendant Morgan that
2	he requires "a lower tier lower bunk area of the jail due to [his] disabilities." ECF No. 127, 4.
3	Defendant Morgan allegedly replied that Plaintiff is to get his mattress from the top bunk area and
4	sleep on the ground. See id. When Plaintiff tried to show Defendant Morgan the chrono,
5	Defendant "Morgan grabbed [Plaintiff] while [he] was facing away from him . . . and forcefully
6	slammed [him] on the ground." Id. Plaintiff alleges that due to this assault, "Plaintiff suffered
7	from quarter size abrasion to left knee, severe pain in right wrist area, swollen throat, mental
8	anguish, and irreparable damages." ECF No. 127, pg. 4.
9	Plaintiff sufficiently alleges an excessive force claim under the Fourteenth
10	Amendment. Plaintiff has demonstrated Defendant Morgan's actions were objectively
11	unreasonable and that the assault was intentional. Therefore, the Undersigned recommends that
12	Defendants' motion should be denied as to Plaintiff's excessive force claim under the Fourteenth
13	Amendment.

14	　　　　　D. Due Process

15	The Due Process Clause protects plaintiffs against the deprivation of liberty
16	without the procedural protections to which he is entitled under the law. See Shallowhorn v.
17	Gonzalez, 2012 WL 1551342, at *4 (E.D. Cal. April 30, 2012) (citing Wilkinson v. Austin, 545
18	U.S. 209, 221 (2005)). Liberty interests are violated when freedom from restraint "imposes
19	atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."
20	Sandin v. Conner, 515 U.S. 472, 484 (1995). As to confinement, "the Constitution itself does not
21	give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."
22	Wilkinson v. Astrue, 545 U.S. 209, 221-22 (2005) (citing Meachum v. Fano, 427 U.S. 215, 225
23	(1976)). Being placed on single cell status or in administrative segregation also does not
24	implicate a protected interest. See Shallowhorn, 2012 WL 1551342, at *4. Additionally, limiting
25	telephone and recreation privileges is not violative of a liberty interest. See Washington v.
26	Rackley, 2017 WL 3009177, at *2 (E.D. Cal. July 14, 2017). Further, the Ninth Circuit "has
27	previously made clear that prisoners do not have a constitutional right to contact visits, even with
28	their family members." Ellis v. Johnson, 792 Fed. Appx. 453, 455 (9th Cir. 2019) (citing Dunn v.

8

Castro, 621 F.3d 1196, 1201 (9th Cir. 2010)).

Plaintiff alleges a due process violation because as a result of a disciplinary hearing Plaintiff was transferred to a single cell, lost visitation rights, and had telephone and recreation privileges restricted. See ECF No. 127, pg. 5. However, none of these punishments within the prison context results in the deprivation of a liberty interest under the Constitution. Therefore, Defendants' motion to dismiss is granted as to Plaintiff's due process claim as against Defendant Croteau.

### E. ADA and Rehabilitation Act

"Title II of the ADA was expressly modeled after § 504 of the Rehabilitation Act." Duvall v. Cty. of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001). The Ninth Circuit has stated that "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act." City of Los Angeles v. AECOM Services, Inc., 854 F.3d 1149, 1160 (9th Cir. 2017) (quoting Zukle v. Regents of Univ. of Cal., 166 F.3d 1041, 1045 n.11 (9th Cir. 1999); see also Weinreich v. L.A. Cty. Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997) ("Title II of the ADA was expressly modeled after Section 504 of the Rehabilitation Act.")). "[C]ases interpreting either are applicable and interchangeable." Douglas v. California Dep't of Youth Authority, 285 F.3d 1226, 1229 n.3 (9th Cir. 2002) (quoting Allison v. Dep't of Corr., 94 F.3d 494, 497 (8th Cir. 1996)).

To show a violation of the ADA, a plaintiff must show the following: "(1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." Duvall, 260 F.3d at 1135 (citing Weinreich, 114 F.3d at 978).

To show a violation of the Rehabilitation Act, a plaintiff must show the following: "(1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." Duvall, 260 F.3d at 1135 (citing Weinreich, 114 F.3d at 978). Because the statutes provide identical "remedies, procedures, and rights," the ADA and

1  Rehabilitation Act claims are analyzed together.  See Vos v. City of Newport Beach, 892 F.3d
2  1024, 1036 (9th Cir. 2018) (citing Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000)).
3       "The ADA prohibits discrimination because of disability, not inadequate treatment
4  for disability."  Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1022 (9th Cir. 2010).  Failing to
5  attend to the medical needs of a disabled person does not violate the ADA.  See Figueira by and
6  through Castillo v. Cty. of Sutter, 2015 WL 6449151, at *9 (E.D. Cal. Oct. 23, 2015).  "The lack
7  of medical treatment or the failure to provide an accommodation for [a plaintiff's] medical
8  condition does not provide a basis upon which to impose liability under the ADA."  Mixon v.
9  Tyson, 2017 WL 5998231, at *5 (E.D. Cal. Dec. 4, 2017) (citing Simmons, 609 F.3d at 1022;
10 Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996)).
11      In Mixon, the plaintiff "suffered a fall, injuring his lower back" while exiting his
12 top bunk.  Mixon, 2017 WL 5998231, at *3.  Plaintiff wrote a 602 administrative grievance
13 requesting a lower bunk, but plaintiff was denied.  See id.  "Plaintiff submitted a medical request
14 form" and was seen by a doctor.  Id.  The doctor refused plaintiff's request.  Id.  Plaintiff fell from
15 his top bunk again and "fractured the bone in his right foot."  Id.  Plaintiff sued under the ADA.
16 Id.  The court held that plaintiff's "complaint does not set forth any facts supporting a claim that
17 he was excluded from or discriminated against with regard to services, programs, or activities" by
18 reason of any diagnosed disability.  Id. at *5.  The court reasoned that "[i]nstead, the incidents
19 giving rise to this lawsuit relate to the medical care [p]laintiff was provided."  Id.
20      Mixon is factually similar to the case before the Court.  Plaintiff alleges a violation
21 of the ADA for being denied access to a lower bunk requiring Plaintiff to sleep on a mattress on
22 the floor near a toilet.  See ECF No. 127, pg. 3.  The incidents giving rise to this lawsuit also
23 relate to the medical care Plaintiff was provided and are not related to being discriminated against
24 because of a disability.  "The lack of medical treatment or the failure to provide an
25 accommodation for his medical condition does not provide a basis upon which to impose liability
26 under the ADA."  Mixon, 2017 WL 5998231, at *5.  And because the Rehabilitation Act uses the
27 same analysis as the ADA, the Undersigned recommends dismissing both the ADA and
28 Rehabilitation Act claims.  Therefore, Defendants' motion to dismiss should be granted as to

Plaintiff's ADA and Rehabilitation Act claims.

"Additionally, to the extent Plaintiff is suing any of the defendants in their individual capacities to vindicate rights under the ADA [or Rehabilitation Act], he may not do so. There is no individual liability under the ADA [or Rehabilitation Act]. Mixon, 2017 WL 5998231, at *5 (citing Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002)).

### F. California Government Code § 11135

Section 11135 of the California Government Code provides:

> No person in the State of California shall, on the basis of sex, race, color, religion, ancestry, national origin, ethnic group identification, age, mental disability, physical disability, medical condition, genetic information, marital status, or sexual orientation, be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state.

Cal. Gov't Code § 11135(a).

However, as with the Plaintiff's ADA and Rehabilitation Act claims, Plaintiff's claim that § 11135 was violated because he was denied a lower bunk accommodation does not state a claim because the allegations are about the sufficiency of his treatment as a disabled person. There are no facts that support a claim for discrimination.

Further, a plaintiff can obtain only equitable relief for a violation of § 11135. Cal. Gov't Code § 11139. Plaintiff has not requested any equitable relief. See ECF No. 127, pg. 12. Additionally, it does not appear that Plaintiff is in Defendants' custody any longer (as previously found in Morgan v. Sacramento Cty. Dep't of Health Service, 2020 WL 7769852, at *5 (E.D. Cal. Dec. 30, 2020)). As such, a potential claim for relief is moot as to the conditions of any facility run by Sacramento County Sheriff's Department (also previously found in Morgan, 2020 WL 776852, at *5). Therefore, the Undersigned recommends granting Defendants' motion to dismiss as to Plaintiff claim under California Government Code § 11135.

///

///

///

## IV. CONCLUSION

Based on the foregoing, the Undersigned recommends that:

        1.       Defendants' motion to dismiss be denied in part and granted in part;

        2.       Defendants' motion be denied as to Plaintiff's Fourteenth Amendment pretrial detention conditions claim;

        3.       Defendants' motion be denied as to Plaintiff's Fourteenth Amendment excessive force claim; and

        4.       Defendants' motion be granted as to all other claims.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 22, 2022

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE